# Motion to Compel
# Exhibit 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AMERICAN CASUALTY CO.
OF READING, PENNSYLVANIA

Plaintiff,

v.

UNITED STATES

Defendant.

CoFC No. 06-354C

**PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS**
**TO DEFENDANT UNITED STATES**

Pursuant to the Rules of this Court and to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff American Casualty Co. of Reading, Pennsylvania ("American Casualty") hereby requests that the following documents be produced by the defendant, the United States of America, ("United States") at the offices of Cohen Mohr, 1055 Thomas Jefferson, Ave., N.W., Suite 504. Washington, D.C. 20007, or such other place as mutually agreed upon by the parties, pursuant to the instructions and definitions that follow. Further, American Casualty requests that the United States provide a written response to these requests in the time and manner prescribed by Rule 34 of the Federal Rules of Civil Procedure.

INSTRUCTIONS

1. In answering these Document Requests, you are required to furnish all documents that are available to you or subject to your reasonable inquiry, access, or control, including documents that are in your possession and the possession of your employees and agents.

2. The obligation to respond to these Document Requests is continuing. If you receive documents responsive to these Document Requests after having already served your responses, you must promptly provide such documents to us.

3. Should you determine to object or decline to answer any of these Document Requests, please state in detail the grounds for objection or refusal to answer.

4. Your responses to these Document Requests are likely to be relied upon by us. Therefore, your responses to these Document Requests must be complete and accurate. The omission of any document from your responses to these Document Requests shall be deemed a representation by you that such document is not known to you, your agents, counsel, or other representatives at the time of the execution of your answers and responses.

5. If you withhold any document pursuant to a claim of privilege or are unable to produce any document within the scope of our Document Requests, you are to state as to each such document (i) the date of the document; (ii) the names of the author(s) or preparer(s) of the documents and an identification by employment and title of each such person; (iii) a brief description of the document, without disclosure of the allegedly privileged material; (iv) and the reason for its not being produced or the basis for the privilege being claimed.

6. In the event that any document falling within our Document Requests has been destroyed or cannot be located, you shall provide a list identifying each such document together with the following information for each such document: (i) the date of the document; (ii) the names of the author(s) or preparer(s) of the documents and an identification by employment and title of each such person; (iii) the name of each person who was sent or furnished the document, or who received, viewed or has had custody of the document, and an identification of each such person by employment and title; (iv) a brief description of the document; (v) the number of pages of the document; (vi) whether there were any attachments, appendices, enclosures or exhibits to the document, and if so

the number of pages of each; (vii) the date of destruction of the document; (viii) the manner of destruction; (ix) the reason for destruction; (x) the name of the person authorizing destruction; (xi) the name of the person destroying the document; and (xii) the paragraph of the Document Requests to which the document relates.

7. We have endeavored to draft these Document Requests clearly and concisely. If you have any questions about these Document Requests, including the definitions and instructions, we urge you to promptly contact us for clarification.

DEFINITIONS

1. As used herein, the term "**document** " means all types of materials in which information is recorded, regardless of the manner in which it is recorded. It includes, but is not limited to, writings of every kind, typed and printed materials, letters, e-mail, telegrams, memoranda, diary entries, notes, schedules, graphs, charts, tabulations, analyses, computer printouts, disks, tapes, sound or mechanical reproductions, and copies of documents that are not identical duplicates of the originals (e.g. because handwritten or "blind" notes appear thereon or are attached thereto) whether or not the originals are in your possession, custody or control. The term "document" also includes all computer files, data sets, or programs, whether or not they have ever been printed. Each nonidentical copy, draft, or reproduction of a document is a separate "document" and shall be produced. **Plaintiff is especially concerned that all responsive e-mail systems be searched, and all responsive e-mail and attachments be produced.**

2. As used herein, the term "**communication**" means any transfer of information, written, oral, or by any other means, including electronic (e-mail).

3. As used herein, the term "**meeting**" means any act or process of coming together, whether formal or informal.

4. As used herein, the word "**and**" and the word "**or**" shall be construed conjunctively or distinctively as necessary to make an interrogatory or document request inclusive rather than exclusive.

5. As used herein, the terms "**concern**", "**concerning**", "**refer**", "**referring**", "**relating to**", "**relate to**" or "**relate**" means directly or indirectly documents pertaining to, containing, discussing, constituting, analyzing, studying, reporting, showing, commenting on, setting forth, considering, recommending, examining or concerning, in whole or in part, including but not limited to, all supporting, underlying or explaining information.

6. As used herein, the term "**person**" means any individual, firm, partnership, association, corporation, or other legal, business or government entity.

7. As used herein, the term "**United States**" means the defendant in this action and includes, but is not limited to, the United States Army Corps of Engineers and the Defense Logistics Agency, including the Defense Distribution Depot Center, Naval Station in San Diego, California and employees of the United States, whether civilian or military.

8. As used herein, the term "**Bird**" means Bird Roofing & Waterproofing Inc.

9. As used herein, the term "**Roofs**" or "**Roof**" means the roof(s) which allegedly failed and are at issue in this litigation

**DOCUMENT REQUESTS**

1. To the extent not already produced, all photographs of the Roofs as repaired by Bird, and/or any other contractor working for or on behalf of American Casualty.

2. All photographs of the Roofs as repaired by the contractor hired by the United States who ultimately perform the repairs at issue in this litigation.

3. To the extent not already produced, all plans or specifications or contracts for the repairs to be done by Bird and/or any other contractor working for or on behalf of American Casualty.

4. All plans or specifications or contracts for the Roof repairs that were performed by the contractor ultimately hired by the United States to repair the Roofs at issue in this litigation.

5. All documents relating to how the plans or specifications or contracts and or repairs performed by the contractor ultimately hired by the United States to repair the Roofs relate to DLA's comprehensive roofing project and/or comprehensive roofing evaluation.

6. All documents that concern, relate and/or refer to meetings between the United States and or its agents and consultants on the one hand and American Casualty, Bird, and/or their agents and consultants on the other hand, which relate to (a) the failure of the Roofs at issue in this litigation, (b) the repair or need for repair to the Roofs, (c) the cost or anticipated cost to repair the Roofs, and (d) the replacement of the Roofs and or the costs relating thereto.

7. All documents that concern, relate and/or refer to meetings among employees of the United States, and or meetings between or among the United States and its agents and consultants, or meetings among agents and consultants of the United States which relate to (a) the failure of the Roofs at issue in this litigation, (b) the repair or need for repair to the Roofs, (c) the cost or anticipated cost to repair the Roofs, (d) the decision to replace rather than repair the Roofs and the related costs, (e) the replacement of the Roofs and or the cost relating thereto, and (d) negotiations with American Casualty, and or Bird and or agents and consultants of either American Casualty And/or Bird.

8. All documents that concern, relate and/or refer to communications between the United States and or its agents and consultants on the one hand and American Casualty, Bird, and/or their agents and consultants on the other hand, which relate to (a) the failure of the Roofs at issue in this litigation, (b) the repair or need for repair to the Roofs, (c) the cost or anticipated cost to repair the Roofs, and (d) the replacement of the Roofs and or the costs relating thereto and (e) negotiations with American Casualty, and or Bird and or agents and consultants of either American Casualty And/or Bird.

9. All documents that concern, relate and/or refer to communications among employees of the United States, and or communications between or among the United States and its agents and consultants, or communications among agents and consultants of the United States which relate to (a) the failure of the Roofs at issue in this litigation, (b) the repair or need for repair to the Roofs, (c) the cost or anticipated cost to repair the Roofs, (d) the decision to replace rather than repair the Roofs and the related costs, (e) the replacement of the Roofs and or the cost relating thereto, and (d) negotiations with

American Casualty, and or Bird and or agents and consultants of either American Casualty And/or Bird.

10. All documents that relate to repairs and/or replacement the Roofs and the costs thereof including but not limited to repairs done by Bird, and or any other contractors that were involved in repairing or replacing the Roofs beginning (in time) with the repairs that were done by Bird and continuing to the present date. This request includes, but is not limited to:

- solicitation documents
- proposal documents
- contract documents
- specifications and drawings
- billing and payment documents
- correspondence with contractors, engineers and consultants
- internal communications concerning repair or replacement of the roofs

This request should be construed to include, but not be limited to, proposals, quotations, cost analysis, studies, assessments and other documents relating to contractors and or engineers or consultants that were not ultimately selected to repair or replace the roofs

11. All documents that relate to cost estimates, investigations, analyses (including engineering, expert analysis or other types of analysis), studies, conclusions, reports etc. relating to (a) repairing the roofs, and/or (b) replacing the roofs.

12. All documents that concern or relate in any way to the decision to replace the Roofs rather than have them repaired. This request includes, but is not limited to:

- internal communications
- communications with contractors, consultants or agents,
- memoranda or any type of memorialization of meetings
- studies are analyses
- any other documents relating to this issue

13. All documents relating to the United States decision to require and or request a cash settlement from American Casualty, rather than having the Roofs repaired by American Casualty. This request includes, but is not limited to, all documents relating to:

- memoranda or any type of memorialization of meetings relating to this issue
- the United States' (DLA's) comprehensive roofing project and/or comprehensive roofing evaluation
- internal communications, including, but not limited to, communications between representatives of the Army Corps of Engineers and other agencies regarding the decision to seek a cash settlement
- communications with contractors, consultants or agents
- internal DLA documents and communications
- communications with American casualty and or other entities
- any other documents relating to this issue

14. All documents relating to the comprehensive roofing project and/or comprehensive roofing evaluation (which included the Roofs at issue in this litigation). This request includes but is not limited to:

- correspondence and e-mail
- plans and specifications
- cost estimates
- internal communications
- communications with contractors, consultants or agents,
- memoranda or any type of memorialization of meetings
- studies are analyses
- documents indicating when the comprehensive roofing project and/or comprehensive roofing evaluation was initiated and the reasons therefore
- any other documents relating to the comprehensive roofing evaluation and or comprehensive roofing project in any way

15. All documents relating to the United States' rejection of the cash settlement offers made by American Casualty, including but not limited to, internal communications, e-mail, memorialization of meetings, studies, government estimates, and all other documents relating to this issue.

16. All documents relating to the United States' refusal (for any reason) to allow American Casualty, and or the contractors that supplied bids to American Casualty, to repair some, all, one, or any of the roof(s). This request includes, but is not limited to, internal communications, e-mail, memorialization of meetings, studies, government estimates, and all other documents relating to this issue.

17. All documents relating to the reasons why or the fact that American Casualty, and or the contractors that supplied bids to American Casualty, to repair the Roofs did not do so. This request includes, but is not limited to, internal communications, e-mail, memorialization of meetings, studies, government estimates, and all other documents relating to this issue.

18. All documents relating to Benchmark Consulting Services LLC that relate to the Roofs at issue in this litigation in any manner, including but not limited to:

- bid documents or specifications issued by Benchmark Consulting Services LLC for repair of the roofs
- documents indicating when the United States received the bid documents or specifications issued by Benchmark Consulting Services LLC
- documents, including internal or external communications of any kind, relating to any alleged inadequacy of bid documents or specifications, prepared by Benchmark Consulting Services LLC, or any other consultant, relating to the roofs
- proposals to repair the roofs
- cost documents and estimates
- any other documents that relate to Benchmark Consulting Services LLC, and the Roofs in any way

19. All documents that concern or relate in any way to any proposal to repair the Roofs whether accepted or not.

20. All documents, both internal and external, relating to the adequacy or any alleged inadequacy of any specifications, plans, or bid documents, to repair the roofs,

including but not limited to, documents issued on behalf of American Casualty and/or Benchmark Consulting Services LLC, or any other organization.

21. All documents that concern, relate and/or refer to any request by American Casualty, and or any contractor or consultant proposed or offered by American Casualty or its representatives for access to the Roofs for any reason. This request includes, but is not limited to, request for access to make repairs and or conduct studies on the Roofs and all documents granting relating to granting or denying such requests including but not limited to, internal communications and documents memorializing meetings and/or other oral communications.

22. To the extent not already produced, all contracts, bonds and/or agreements between the United States and American Casualty or Bird.

23. All documents that concern, relate and/or refer to communications between the United States and American Casualty and/or any representative, agent, attorney, consultant working on behalf of American Casualty. This request includes not only documents pertaining to the communications themselves, but also internal communications, memorandum, memorialization of meetings, and/or any other documents that relate to the communications and anyway.

24. All documents that relate to the repairs to the roofs on building 317. This request includes, but is not limited to:

- documents pertaining to the original roof repairs done by Bird, including contract and specification documents
- documents pertaining to any problems with the original roof repairs done by Bird, including any analyses, photographs, memoranda, e-mail etc.
- documents pertaining to the subsequent repairs which were done on behalf of American Casualty. (This includes, but is not limited to, repairs done by or at the behest of Van Dijk & Associates, Inc.)

- documents pertaining to the adequacy or inadequacy of the repairs which were done on behalf of American Casualty, including but not limited to repairs done by or at the behest of Van Dijk & Associates, Inc.

25. With respect to the Contracting Officer's Final Decision dated May 3, 2005, and specifically with respect to the allegation therein, that "[a]lthough C&H made (and later withdrew) a monetary offer on behalf of the Surety, the amount was insufficient to reflect the scope of needed repairs on buildings 3304 and 322" produce all documents relating to this allegation and anyway, including but not limited to, the following:

- all documents supporting the allegation that the amount was insufficient to repair the roofs
- all documents refuting, contradicting, or challenging in any way the allegation that the amount was insufficient to repair the roofs
- all documents relating to DLA's, comprehensive roofing project and/or comprehensive roofing evaluation and its relationship to the negotiations with American Casualty or its representatives
- government estimates for the repairs
- any roofing analyses relating to the repairs
- all documents relating to the alleged withdrawal of the monetary offer

26. All documents relating to any and all monetary offers made by American Casualty and/or its representatives including, but not limited to, internal communications or documents relating to such offers.

27. With respect to the Contracting Officer's Final Decision dated May 3, 2005, and specifically with respect to the allegation therein, that "Surety also proposed tendering performance by a contractor, but refused to provide information to the Corps about the scope of the proposed repairs despite repeated requests prior to the expiration of the repair contractor's bid, and has still not provided it" produce all documents relating to this allegation and anyway, including but not limited to, the following:

- all documents indicating requests by the United States for information concerning the scope of the proposed repairs
- all documents indicating any alleged refusal requests by the surety to provide information concerning the scope of the proposed repairs
- all bid or specification documents prepared on behalf of the surety and provided to the United States for the repairs of the Roofs and all documents indicating when the bid or specification documents were provided to the United States

28. With respect to the Contracting Officer's Final Decision dated May 3, 2005, and specifically with respect to the allegation therein, that "for repairs to Building 3304, DLA paid $609,988.00 for contract costs including award and administration costs as well as supervision and inspection costs, but not including applicable facility assessment costs and correction recommendations amounting to $125,331.86. The total of these costs, $726,319.86, is fair and reasonable based on comparison to the original price to produce a product of similar quality to that originally contracted for" produce all documents relating to this allegation and anyway, including but not limited to, the following:

- all documents indicating what comprises the $609,988.00 figure and all documents that support the $609,988.00 figure as well as documents indicating the type and quality of Roof that was purchased for that amount
- all documents indicating what comprises and or supports the $125,331.86 figure as well as documents indicating what work was done for that amount including but not limited to the "correction recommendations"

29. With respect to the Contracting Officer's Final Decision dated May 3, 2005, and specifically with respect to the allegation therein, that:

> The price of $38,146.00 offered by the Surety for the repairs to Building 322 was deemed acceptable when the problems developed in 2001, although the scope of work was still not clear. Applying inflation of 2% per year, a fair and reasonable amount for building 322 would be $39,290.00, plus 6.5% for Supervision and Administration ("S&A") for a total of $41,438. The total for building 3304 and 322 is rounded to $767,758. In addition, the Government is claiming $205,000.00 for the Roof failure of Building 36, for a grand total of $972,758.

produce all documents relating to this allegation and anyway, including but not limited to, the following:

- all documents indicating what comprises the $205,000.00 figure and all documents that support the $205,000.00 figure as well as documents indicating what if anything was purchased for that amount (Note Findings of Fact number 43 alleges a repair cost of $205,054 for the failure of the Roof at Building 36 and all documents relating to that greater sum are also requested.
- all documents relating to the "Roof failure of Building 36" and or any repairs to Building 36 and or the cost of any repairs to Building 36
- all documents relating in any way to the $38,146.00 figure, including but not limited to the alleged offer, as well as documents indicating what work was done for that amount
- all documents relating to the United States' previous acceptance or nonacceptance or other communications relating to the "$38,146.00 offered by the Surety for the repairs to Building 322"
- all documents relating to any repairs done to Building 322 and the cost thereof
- all documents relating to the 2% inflation factor used by the United States and all documents supporting such figure or the use thereof
- all documents relating to the 6.5% S&A factor applied by the government, including, but lot not limited to all documents supporting the incurrence of such costs and or the reasonableness of the factor applied and/or the basis for applying this 6.5% S&A charge

30. With respect to the Contracting Officer's Final Decision dated May 3, 2005, and specifically with respect to Findings of Fact number 27 and tab 24 provide all documents that evaluate, discuss, or otherwise mention in any way the documents contained at tab 24. This request includes, but is not limited to, documents alleging that the specifications were in any way inadequate to perform the repairs.

31. With respect to the Contracting Officer's Final Decision dated May 3, 2005, and specifically with respect to Findings of Fact number 29 provide all documents relating to the alleged telephone calls discussed in this Finding of Fact

32. With respect to the Contracting Officer's Final Decision dated May 3, 2005, and specifically with respect to Findings of Fact number 30 provide all documents relating to the alleged "preliminary internal estimate for Buildings 3304 and 322." This request includes, but is not limited to, the following:

- documents identifying who prepared the preliminary internal estimate
- instructions to the individual who prepared the preliminary internal estimate
- all drafts of the preliminary internal estimate
- **all documents and/or other materials relied upon in preparing the preliminary internal estimate and all documents relating to how the estimate was prepared**
- all documents indicating the scope of work on which the preliminary internal estimate was based
- all documents relating to the alleged error in the preliminary internal estimate. All documents relating to the alleged provision of the preliminary internal estimate to Ms. Corday.
- all documents in forming Ms. Corday and or American Casualty of the alleged error in the primary internal estimate

33. With respect to the Contracting Officer's Final Decision dated May 3, 2005, and specifically with respect to Findings of Fact number 31 provide all documents relating to the alleged telephone conversation of October 9, 2003.

34. All documents relating to the United States allegation in the Contracting Officer's Final Decision that the scope of work included in the solicitation(s) issued on behalf of the surety was in any way inadequate.

35. All documents relating to the United States allegation in the Contracting Officer's Final Decision that the offer(s) of payments made on behalf of the surety were in any way inadequate.

36. Tab 33 to the Contracting Officer's Final Decision and any responses to the e-mail or other correspondence or communications relating to the e-mail at tab 33.

37. With respect to the Contracting Officer's Final Decision dated May 3, 2005, and specifically with respect to Findings of Fact number 40 provide all documents relating to the alleged "independent analysis" which "determined a replacement cost similar to the original task order amount of $524,120.83 for building 3304 alone."

38. With respect to the Contracting Officer's Final Decision dated May 3, 2005, and specifically with respect to Findings of Fact number 49 provide all documents relating to the allegation that" the Corps did not do a detailed review, based upon assurances from the Surety that the failed Roof would be removed and replaced as specified in the task order." This request includes, but is not limited to, all documents relating to the alleged "assurances."

39. With respect to the Contracting Officer's Final Decision dated May 3, 2005, and specifically with respect to Findings of Fact number 52 provide all documents relating to the allegation that "the surety's solicitation was ambiguous as written, because it was not clear whether the proposal was for the original scope of work or permitted an alternative system." This request includes, but is not limited to, all documents notifying the surety or its representative of the alleged ambiguity.

40. With respect to the Contracting Officer's Final Decision dated May 3, 2005, and specifically with respect to Findings of Fact number 54 provide all documents relating to the allegation that "the repair procedure of the Surety's low-price proposer may have constituted an alternate system."

41. With respect to the Contracting Officer's Final Decision dated May 3, 2005, and specifically with respect to Findings of Fact number 55 provide all documents relating to the alleged "independent quotation that DLA had obtained for the repair [that]

was similar and amount to what the original installation cost." This request includes not only the independent quotation but also all documents relating to the scope of work on which the independent quotation was based.

42. With respect to the Contracting Officer's Final Decision dated May 3, 2005, and specifically with respect to Findings of Fact number 56 provide the following:

- all documents relating to the Western Colloidal roofing system, including, but not limited to, any analyses thereof.
- all documents relating to your allegation that the system "appears to be more similar to a built -- up system"
- all documents pertaining to your allegation that the "system does not meet the requirements of the Task Order."
- All documents pertaining to your allegation that "it would typically require that structural investigation be performed to confirm that the existing structure would support the additional Roof on top of the existing Roof system."
- All documents relating to any structural investigation that was done for the roofing system that was ultimately used by the United States to repair the Roofs.

43. With respect to the Contracting Officer's Final Decision dated May 3, 2005, and specifically with respect to Findings of Fact number 59 provide the following:

- all documents relating to the allegation that the "actual cost to the DLA for replacing the Roof at building 3304 was $563,450.00." This request includes but is not limited to documents indicating the scope of work that was accomplished for the sum stated.
- all documents relating to the allegation that American Casualty is liable for "$125,331.86 for investigation and design." This request includes, but is not limited to, all design work purchased for $125,331.86, including the documents produced for that sum and the cost documents supporting the figure
- all documents relating to the allegation that American Casualty is liable for "$37,538.00 for contract award, investigation and design." This request includes, but is not limited to, documents indicating the work accomplished that sum and the cost documents supporting the figure.

44. Any other documents not otherwise requested that concern, relate and/or refer to any of the material issues in this case.

Respectfully submitted,

Victor G. Klingelhofer
Cohen Mohr, LLP
1055 Thomas Jefferson St., NW, Suite 504
Washington, DC 20007
Tel. (202) 342-2550
Fax (202) 342-6147
Counsel for Plaintiff

CERTIFICATE OF FILING

I hereby certify that on this 12th day of December, 2006, a copy of the foregoing: **"PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT UNITED STATES"** was served by facsimile transmission and by US Mail on the following:

JOAN M. STENTIFORD
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
Washington, D.C. 20530

Fax: (202) 514-8624

Victor G. Klingelhofer

# Motion to Compel
# Exhibit 2

## John O'Brien

**From:** John O'Brien
**Sent:** Thursday, January 25, 2007 10:13 AM
**To:** 'joan.stentiford-ulmer@usdoj.com'
**Cc:** Victor Klingelhofer
**Subject:** American casualty Co. of Reading Pennsylvania v. United States, CoFC No. 06-354C

Dear Ms. Stentiford:

Please inform Mr. Klingelhofer and me when we can expect your response to "Plaintiff's Request for Production of Documents to Defendant United States" which was served on you, by both mail and fax, on December 12, 2006.

We would like to receive the documents as soon as possible so that we may commence depositions without endangering the schedule in this case.

Thank you for your prompt attention to this matter.

Sincerely,

**John O'Brien**
Cohen Mohr LLP
1055 Thomas Jefferson St. NW
Suite 504
Washington, DC 20007
Telephone: (202) 342-2550
Fax: (202) 342-6147
www.cohenmohr.com

**John O'Brien**

---

**From:** John O'Brien
**Sent:** Thursday, February 01, 2007 9:59 AM
**To:** 'joan.stentiford-ulmer@usdoj.com'
**Cc:** Victor Klingelhofer
**Subject:** RE: American casualty Co. of Reading Pennsylvania v. United States, CoFC No. 06-354C

Dear Ms. Stentiford:

I still have not received any answer from you regarding when I can expect your response to "Plaintiff's Request for Production of Documents to Defendant United States" which was served on you, by both mail and fax, on December 12, 2006.

Please inform me immediately. When you intend to respond or I shall have no option remaining except to file a motion to compel production with the court.

Thank you.

**John O'Brien**
Cohen Mohr LLP
1055 Thomas Jefferson St. NW
Suite 504
Washington, DC 20007
Telephone: (202) 342-2550
Fax: (202) 342-6147
www.cohenmohr.com

---

**From:** John O'Brien
**Sent:** Thursday, January 25, 2007 10:13 AM
**To:** 'joan.stentiford-ulmer@usdoj.com'
**Cc:** Victor Klingelhofer
**Subject:** American casualty Co. of Reading Pennsylvania v. United States, CoFC No. 06-354C

Dear Ms. Stentiford:

Please inform Mr. Klingelhofer and me when we can expect your response to "Plaintiff's Request for Production of Documents to Defendant United States" which was served on you, by both mail and fax, on December 12, 2006.

We would like to receive the documents as soon as possible so that we may commence depositions without endangering the schedule in this case.

Thank you for your prompt attention to this matter.

Sincerely,

**John O'Brien**
Cohen Mohr LLP
1055 Thomas Jefferson St. NW
Suite 504

Washington, DC 20007
Telephone: (202) 342-2550
Fax: (202) 342-6147
www.cohenmohr.com